428 So.2d 819 (1982)
Alvin LETO, d/b/a Al Leto Plumbing Co.
v.
CYPRESS BUILDERS, INC., et al.
No. 13293.
Court of Appeal of Louisiana, Fourth Circuit.
December 1, 1982.
On Rehearing March 4, 1983.
*820 Walter R. Fitzpatrick, Jr., New Orleans, for defendants/appellees.
Charles E. Hamilton, III, New Orleans, for petitioner/appellant.
Before SCHOTT, LOBRANO and AUGUSTINE, JJ.
LOBRANO, Judge.
On January 7, 1977, plaintiff-appellant, Alvin B. Leto and defendant-appellees Cypress Builders, Inc. and Blueridge, Inc., entered into a contract calling for plumbing materials and work on eight houses owned by appellees located in the Third District of the City of New Orleans. The total contract price was $21,485.00, payable in three installments, the first one-third on completion of underground, the second one-third on completion of topping out, and the balance due on completion of each house. All parties agree that the first two installments were made, thus leaving the sum of $7,161.64 unpaid, not including any extras incurred during the work operations which were necessary for the completion of the contract. Admitted into evidence without objection was the contract, the plans and specifications of the homes, invoices for extras, plumbing inspection reports, the contract with Area Plumbers for the completion of the work on two of the homes and the proposal by Area Plumbers for hose bib installation at six of the eight properties involved in this suit.
On January 16, 1978, appellant, Alvin B. Leto filed suit against Appellees, Cypress and Blueridge, Inc., Clara L. Yers, wife of/and Arthur F. Wilson, Evelyn Heisser, wife of/and Edward Francis Mack and Teresita Erskine, wife of/and John C. Riley, alleging that Cypress and Blueridge breached the contract and were indebted to him for $7,610.70, which includes the unpaid balance on the contract plus extras. Appellant alleged that he was entitled to a lien and privilege on the property of the other defendants who purchased the homes which his contract covered and for which he claimed money remained unpaid. He admitted the work was not completed, but alleged that the failure to complete the work was through the fault of appellees in delaying and poorly coordinating the work of the various trades. He claimed the full balance of the contract plus extras, asserting that he walked off the job only when appellees breached the contract by refusing, in a letter of May 2,1977, to pay him as per the terms of the written agreement. In the May 2, 1977 letter to appellant, appellees, through the person of Nelson Chatelain, president of Cypress Builders, advised appellant that the balance of the contract price would not be paid until 100% of all work would be completed including certain *821 "punch list" items on homes not covered by the subject contract.[1]
Cypress and Blueridge answered the suit admitting the contract and admitting that they refused to pay. They allege that they refused payment because the work was not done in a thorough and workmanlike manner, and that appellant caused undue delays. Appellees denied they contributed to the failure of appellant to complete his work timely and claimed a reduction in the amount due by:
1) all sums necessary to complete the work under the contract;
2) damage to walls caused by the carelessness and negligence of plaintiff's employees;
3) the cost of correcting certain work which defendant claims was improperly done in that it did not comply with the plans, specifically the placement of "hose bibs" at 6 of the 8 properties;
4) the cost of all warranty work required on the properties which the plumbing contractor would have done at no cost to appellees had the contract been completed.
The individual homeowners were dismissed with prejudice from the suit by agreement between counsel since the liens against their homes were "bonded out".
This matter was heard by the Honorable Anthony Vesich, Commissioner, under La. R.S. 13:1171 Sec. C. He found that there was no clear cut breach of the contract by either party and that neither party was completely free from fault. The commissioner found, however, that a substantial portion of the work was completed by appellant and that justice would be served by finding judgment for appellant for the balance of the contract, $7,161.64 plus one extra (for back hoe service) in the amount of $115.00 for a total award of $7,276.64. The commissioner reduced this amount by certain off-sets asserted by appellees, to wit: $1,319.63 for correcting hose bib installation; $178.00 for warranty work and $2,915.00 for completion of work on two of the properties after appellant walked off the job. Thus, appellant was awarded a total judgment of $2,864.01 plus interest from judicial demand. The trial court adopted the commissioner's report as correct and entered judgment as per that report. Appellant filed this appeal asserting three specifications of error:
1) from the facts and evidence adduced at trial, the trial court erred in failing to find that appellees breached the contract with appellant and as such,
2) appellees were not entitled to any offsets for completion of the contract and,
3) appellees have no standing to complain of the purported mislocation of hose bibs because as a matter of law only homeowners would have standing to recover this expense.
We agree with the trial court that judgment should be entered for appellant. However, we do not agree that neither party breached the contract. It is clear from the record that no matter what the squabbles and difficulties were between appellant and appellees, appellees clearly breached the contract by refusing, in writing, to pay as the contract provided. In the letter of May 2, 1977 appellee admitted that some of the houses were complete, but still refused payment on those. Appellant was, without a doubt, advised that the terms of the subcontract would not be honored. The contract was, in fact, breached. A review of the testimony shows that appellees had no lawful cause to breach said contract, and further the testimony of Mr. Chatelain makes it clear to this Court that appellee was withholding funds on this contract in an attempt to get punch lists items on other houses completed. As the witness stated, he was trying "to scare Al" into sending his men to the jobsites whenever appellee requested. There is no doubt that a great deal of disagreement existed between appellant *822 and appellees as to the coordination of the various trades. Perhaps this is a problem inherent in any construction project. But, this can in no way be considered a lawful reason to breach the most material provision of a contract.
The terms of the contract are law between the parties and as such are not to be taken lightly. La.C.C. Art. 1945. This Court has clearly held that, where a subcontractor does not receive payment timely and in accordance with the terms of his contract, he may decline to perform further because the other party's breach has made his performance precarious. Lawson v. Donahue, 313 So.2d 263 (La.App. 4th Cir.1980). When such a breach occurs, the subcontractor may recover the sums representing loss of income and profits, plus the cost of "extras" agreed to. General Refrigeration Company of Lake Charles, Inc. v. Style Home Builders, Inc., 379 So.2d 1211, (La. App. 3rd Cir.1980).
The Lawson and General Refrigeration Company cases, cited above, make it clear that because appellees breached the contract they can not recover for off-sets or costs of completing the work which would reduce appellant's profits, and thus the trial court was in error in that regard. As for the extras listed by appellant, he testified that he had verbal permission from appellee to do the work. All invoices for extras were admitted into evidence without objection. Appellees on cross-examination only challenged one of the extras, that for the back hoe service. At the request of appellees' superintendent, appellant hired the back hoe for digging a drainage hole so that he could complete the underground phase of the work. The court allowed a recovery on this challenged item but denied recovery on the items for which no challenge was made. The documentary evidence and testimony clearly shows the extra work was performed, the work was necessary and the charges were reasonable.[2] Thus, the court incorrectly held that appellant could not recover these other proven extras.
A review of the record, and more particularly the documents reflecting the actual completion dates of the two houses that were remaining when appellant left the job, clearly indicate to this Court that he performed his work expeditiously and was not a cause for delay. Appellees complain that on six of the eight houses appellant did not locate the hose bibs according to the plans and specifications. We agree with this contention, however, in General Refrigeration, supra, it was stated:
"... Defendant is not entitled to any off-set or credit because it suffered no damages. In each of the instances in which defendant now claims credit for the price differential between Lennox and Gaffer and Sattler, the homes were sold by the defendant, with no reduction in the sale price because of the presence in the home of a Gaffer and Sattler unit instead of some other type unit." 379 So.2d at 1212, 1213.
Thus, the trial court's decision to grant the off-set for the hose bib installation is clearly erroneous in the absence of any showing by appellees that they (1) could not sell the houses for the proper price without correcting the deviation or (2) that they in fact sold the houses at a reduction in the sale price because of the deviation. Appellees also sought reimbursement for sheetrocking repairs to holes in walls which they claim were caused by appellant's men. The trial court disallowed this off-set as not being proven. After a review of the record we must agree with the trial court in that regard. The evidence and testimony clearly proves the damage was not the result of any work done by appellant or his men but the incompetence of the sheetrocking contractor.
*823 For the foregoing reasons, the judgment of the trial court is amended in part, and reversed in part as follows: The award to appellant for the balance of the contract in the amount of $7,161.64 plus the extra for back hoe service in the amount of $115.00 is affirmed. The award denying appellant recovery on the additional extras totaling $284.00 is reversed and judgment is entered for this amount.
Finally, the judgment allowing appellees off-sets for the $2,915.00 for completion of the work, $1,319.63 for hose bib installation and $178.00 for warranty work is reversed. Judgment is hereby entered in favor of appellant for the balance on the contract of $7,161.64, plus $115.00 extra for the back hoe service and $284.00 in other proven extras for a total of $7,560.64, plus legal interest from judicial demand, and all costs below, and in this Court.
AFFIRMED IN PART, REVERSED IN PART.

ON REHEARING
We granted rehearing in this matter to reconsider two issues.
On the first issue, appellees argue that the extras claimed by Leto were not proved. We disagree. Appellees' counsel on crossexamination questioned Mr. Leto as follows:
"Mr. Leto, I'm going to show you a number of sheets which your counsel and I have agreed seem to be the extra bills that were all stapled together. There are many sheets that we have marked as No. 23 for identification, and I ask whether these are the bills for extras that you were referring to in that total of $7600?
A. Yes, sir.
* * * * * *
Q. Mr. Leto, these bills represent matters which as far as you were concerned, were not covered by the contract but which were engaged, which you were engaged to do by Mr. Chatelain, is that correct?
A. Yes, sir."
Each bill introduced into evidence clearly shows the extra work done by appellant. These exhibits, combined with Mr. Leto's testimony constitute a preponderance of evidence in this Court's opinion to substantiate recovery of the extras.
On the second issue, appellees argue that this Court was in error in its original opinion by granting judgment in favor of appellant for the entire balance of the contract rather than the costs incurred and the actual profit remaining in the contract. We agree that this is a correct statement of law as set forth in General Refrigeration Company of Lake Charles, Inc., v. Style Home Builders, Inc., 379 So.2d 1211 (La.App. 3rd Cir.1980), and we so held in our original opinion. The problem arises as to just what is "lost profit". Mr. Leto testified that he had ordered and paid for the materials needed to complete the job prior to his being refused payment. He further testified that he was ready to complete the job. For reasons set out in our original opinion, he was not allowed to do so.
It is apparent to this Court, and we so hold that Mr. Leto is entitled to the balance of contract price less (1) the present value of the materials he purchased, but did not use because of appellees' breach of the contract and (2) the cost of labor which would have been incurred had Leto completed the job. Theoretically Mr. Leto still has the materials, and upon payment of the contract balance they become the property of appellees. We therefore remand this matter for the limited purpose of determining the value of the materials purchased to complete the job, but were not actually used and the cost of labor which would have been incurred by Leto. The contract balance of $7,161.64 is to be offset by the value of those materials and labor. In all other respects, our original opinion is affirmed.
NOTES
[1] Apparently appellant had performed work for appellee on homes that were not part of the contract involved in this litigation.
[2] This court has studied the various invoices submitted by appellant, and concludes that the extras to be allowed are as follows:

No. 3 Oakridge $ 18.00
No. 5 Oakridge 38.00
No. 7 Oakridge 38.00
No. 9 Oakridge 38.00
No. 11 Oakridge 38.00
7600 Bullard 38.00
7608 Bullard 38.00
7612 Bullard 38.00
 _______
 Total $284.00